The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms and adopts the Deputy Commissioner's decision and enters the following Opinion and Award.
**********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on February 19, 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The carrier on the risk for defendant-employer, Homelite, Inc., is John Deere Insurance Company and the carrier on the risk for defendant-employer, Olsten Temporary Service, is ITT Specialty Risk Services, Inc.
4. The average weekly wage of plaintiff-employee while employed by Olsten Temporary Service was $220.00, yielding a compensation rate of $146.67 per week.
5. The date of the alleged occupational disease contracted while employed by Homelite, Inc., was April 28, 1995. The date of the alleged occupational disease contracted while employed by Olsten Temporary Service was August 7, 1995.
6. The parties stipulated to plaintiff's payroll records.
7. The parties stipulated to plaintiff's medical records from Mercy Medical Emergency Room; Oweida Orthopaedic Associates; Mercy Rehabilitation Clinic; Charlotte Radiology Diagnostic Imaging Center; and The Diagnostic Center.
8. The issues presented are:
a. Whether plaintiff contracted an occupational disease?
 b. Whether plaintiff's employment for defendant-employer, Olsten Temporary Service, aggravated plaintiff's occupational disease?
 c. Whether plaintiff's last injurious exposure occurred while she was employed with defendant-employer, Olsten Temporary Service?
 d. Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
9. Plaintiff's average weekly wage while working for defendant-employer Homelite, Inc. was $414.68.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was 49 years old at the time of the hearing on February 19, 1998 and had completed the eighth grade. Plaintiff is right hand dominant.
2. Plaintiff's work history consists of employment as a cashier, box inspector at Old Dominion Box Company, housekeeper, security guard, certified nursing assistant, and a machine operator for approximately 10 months at Sparco Yarns in Lincolnton, North Carolina.
3. Plaintiff was hired by defendant-employer, Homelite, Inc. on March 20, 1995. Plaintiff initially performed the job of inspecting weed eater motors for about one week.
4. Plaintiff's second job for defendant-employer, Homelite, Inc., was building mufflers on weed eaters. This job required plaintiff to screw the mufflers onto the weed eaters using air guns which required that plaintiff reach up and pull them down with her right arm. Plaintiff performed this job for approximately one week.
5. Plaintiff's third job for defendant-employer, Homelite, Inc., was that of the clutch drum builder. Plaintiff performed this job standing at a table which was approximately waist high. Plaintiff used three air guns which required that she reach up with her right hand and pull them down to screw a cover into the clutch drum using four separate screws. Plaintiff would then screw the clutch drum plate in a similar manner and would then apply pressure to the screws for approximately two to three seconds. Plaintiff did this repeatedly all day long. Plaintiff worked on a production line.
6. Plaintiff performed the job of clutch drum builder for about three weeks when she first noticed her right hand swelling. Her wrist would tingle and her arm became painful up to her right shoulder. Plaintiff had never experienced these symptoms prior to working at defendant-employer, Homelite, Inc.
7. Plaintiff reported her painful condition to Brenda Gordon, her supervisor. Ms. Gordon supplied plaintiff with a wrist brace which did not help relieve her symptoms. The second time plaintiff reported her painful condition to Brenda Gordon, plaintiff-employee was moved to another position. This position required plaintiff to build cardboard boxes. Plaintiff testified that she was required to build them at a rapid rate and that this exacerbated her painful right arm and shoulder condition. Plaintiff again reported this to Brenda Gordon, who moved plaintiff-employee to a final "packing" position. Final packing required plaintiff to put batteries and tapes into clear plastic bags and to push the plastic bag into a packing machine. Plaintiff testified that she was required to perform this job at a rapid rate and that it exacerbated and aggravated her painful right arm and shoulder condition.
8. Plaintiff was laid off by defendant-employer, Homelite, Inc. on June 3, 1995.
9. Plaintiff presented to Dr. G. M. Yearta at Mercy Medical on May 10, 1995. Dr. Yearta documented plaintiff's right arm pain, prescribed a sling and referred her to Dr. Humble, an orthopaedic surgeon.
10. Plaintiff presented to Dr. Humble on May 11, 1995. Dr. Humble's initial impression was cubital tunnel and carpal tunnel syndrome of the right arm as well as mild right shoulder impingement. Dr. Humble prescribed medication and wrote plaintiff out for light duty, restricting her from using her right hand.
11. Dr. Humble's notes from May 24, 1995 indicate that her carpal tunnel symptoms were resolving but that her shoulder impingement symptoms were increasing. Dr. Humble opined that plaintiff's symptoms seem to be work related.
12. On June 17, 1995, Dr. Humble further opined that while plaintiff had been laid off, her right shoulder impingement was symptomatic.
13. On August 7, 1995, plaintiff again returned to Dr. Humble complaining of right shoulder pain. Dr. Humble believed that all of plaintiff's pain and problems stemmed from her shoulder. Dr. Humble ordered an MRI scan and it revealed a significant bursa accumulation and severe impingement with decreased supraspinatus outlet. Dr. Humble recommended surgery.
14. Plaintiff remained under Dr. Humble's care, but was unable to undergo surgery until October 1, 1996, because this workers' compensation claim was denied and plaintiff was financially unable to pay her medical costs.
15. On March 5, 1997, Dr. Humble noted that plaintiff had a poor outcome from her initial arthroscopy and subacromial decompression, and he ordered an MRI. The MRI revealed that a prominent bone spur at the AC joint was causing ongoing impingement and partial rotator cuff tear and recommended further surgery which he performed on March 29, 1997. On June 16, 1997, Dr. Humble referred plaintiff into physical therapy.
16. Plaintiff testified that she attempted to work after being laid off by defendant-employer, Homelite, Inc. She sought employment through defendant-employer, Olsten Temporary Service, who found her a job at National Fruit as a packer. Plaintiff worked at National Fruit from July 21, 1995 until September 17, 1995. This job required her to take bottles, jars and cans and pack them into boxes and to lift boxes. These activities were painful to plaintiff's right arm and shoulder. Plaintiff testified that her male co-workers helped her lift most of the heavy boxes and that most of her lifting was from the floor to the waist and that she performed most of the paperwork while her male co-workers performed a majority of the physical labor. Plaintiff worked in pain with National Fruit until her job ran out on September 17, 1995.
17. Plaintiff also worked for Revco in Bessemer City, North Carolina from February, 1996 until approximately April of 1996. Plaintiff testified that she filled prescriptions and worked at the cash register during this period of time. Plaintiff quit this job due to painful conditions in her right shoulder and arm which prevented her from putting caps on the bottles after she filled prescriptions.
18. On June 13, 1996, plaintiff began working at Wal-Mart where she worked for two days on a computer. Wal-Mart then requested that she work at a physical labor job. Plaintiff was unable to perform the physical labor and she resigned from Wal-Mart.
19. Plaintiff again sought employment through defendant-employer, Olsten Temporary Service but was unable to retain a job due to the painful condition in her right arm and shoulder.
20. Plaintiff testified that her right arm and shoulder has remained extremely painful since she first reported her condition to defendant-employer, Homelite, Inc. Plaintiff testified that she has stopped essentially all activities including housework due to her condition.
21. Dr. Humble determined that plaintiff had the anatomical makeup that would predispose her to develop bursitis and impingement of her right shoulder. Dr. Humble further stated however, that based upon the job description given to him by plaintiff and by plaintiff's attorney during the depositions, that her job at defendant-employer, Homelite, Inc., could or might have aggravated her shoulder bursitis and impingement.
22. Dr. Humble opined that plaintiff's job at defendant-employer, Homelite, Inc., caused her right shoulder bursitis and impingement to become symptomatic.
23. Dr. Humble also opined that plaintiff's job at Homelite, Inc. put her at an increased risk of sustaining an aggravation of her right shoulder bursitis and impingement syndrome than the general public not so employed.
24. Dr. Humble further opined that bursitis and tendinitis are essentially synonymous and that plaintiff's right shoulder impingement led to the formation of bursitis in her right shoulder.
25. Dr. Humble determined that plaintiff's first surgery in October of 1996, could or might have caused or precipitated the arthritic condition that developed in the AC joint and the bone spur which led to a second surgery on April 28, 1997.
26. Dr. Humble opined that plaintiff's job at National Fruit did not worsen or augment plaintiff-employee's right shoulder impingement nor her bursitis.
27. Plaintiff's employment with defendant-employer, Homelite, Inc., placed plaintiff at an increased risk for of sustaining an aggravation of her right shoulder bursitis and impingement syndrome than the general public not so employed.
28. Plaintiff's bursitis was due to causes and conditions characteristic of and peculiar to plaintiff's particular employment with defendant-employer, Homelite, Inc., as a clutch drum builder, which is not an ordinary disease of life to which the general public is equally exposed outside of this employment.
29. Plaintiff's right shoulder impingement condition was due to causes and conditions characteristic of and peculiar to plaintiff's particular employment with defendant-employer, Homelite, Inc., as a clutch drum builder, which is not an ordinary disease of life to which the general public is equally exposed outside of this employment.
30. Plaintiff was last injuriously exposed to the hazards of bursitis while employed by Homelite, Inc., and while John Deere Insurance Company was the carrier on the risk.
31. Plaintiff was last injuriously exposed to the hazards of right shoulder impingement while employed by Homelite, Inc., and while John Deere Insurance Company was the carrier on the risk.
32. Plaintiff's average weekly wage while working for defendant-employer Homelite, Inc. was $414.68, yielding a compensation rate of $276.59.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage while working for defendant-employer Homelite, Inc. was $414.68, yielding a compensation rate of $276.59. G.S. § 97-2(5).
2. Plaintiff suffers from the occupational diseases of right shoulder impingement and right shoulder bursitis which were caused by conditions characteristic and peculiar to plaintiff's employment with defendant-employer, Homelite, Inc., and are not ordinary diseases to which the general public is equally exposed. G.S. § 97-53(13); G.S. § 97-53(17).
3. As a result of plaintiff's occupational diseases of bursitis and right shoulder impingement, plaintiff is entitled to temporary total disability benefits at the rate of $276.59 per week beginning June 3, 1995 but excluding the time periods plaintiff was employed by Olsten Temporary Service, Revco and Wal-Mart, and continuing until plaintiff returns to work or until further order of the Commission. G.S. § 97-2(9); G.S. §97-29.
4. Plaintiff is entitled to have defendant-employer, Homelite, Inc., pay for all medical expenses incurred or to be incurred as a result of plaintiff's right shoulder impingement and bursitis so long as such examinations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen the period of plaintiff's disability from her occupational diseases, including medical expenses related to plaintiff's arthritic condition that developed in her surgery in the AC joint, the bone spur and the right shoulder partial rotator cuff tear which led to a second surgery and including the second surgery on April 28, 1997. G.S. § 97-25; G.S. § 97-59; G.S. § 97-2(19).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-employer, Homelite, Inc., shall pay plaintiff temporary total disability compensation at the rate of $276.59 per week beginning June 3, 1995 but excluding the time periods plaintiff was employed by Olsten Temporary Service, Revco and Wal-Mart, and continuing until plaintiff returns to work or until further order of the Commission. The amounts of temporary total disability compensation which have accrued shall be paid to plaintiff in a lump sum, subject to an attorney's fee provided below.
2. Plaintiff is entitled to temporary total disability compensation, however, plaintiff in good faith attempted to work with National Fruit, Revco and Wal-Mart and defendants are entitled to a credit for the sums she earned while she attempted to return to work.
3. Plaintiff is entitled to have defendant-employer, Homelite, Inc., pay for all medical expenses incurred or to be incurred as a result of plaintiff's right shoulder impingement and bursitis so long as such examinations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen the period of plaintiff's disability from her occupational diseases, including medical expenses related to plaintiff's arthritic condition that developed in her surgery in the AC joint, the bone spur and the right shoulder partial rotator cuff tear which led to a second surgery and including the second surgery on April 28, 1997.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation benefits due under Paragraph 1 of this Award is approved. Of the accrued amount paid in a lump sum to plaintiff, defendant-employer, Homelite, Inc., shall deduct twenty-five (25%) percent and forward that amount directly to plaintiff's counsel. For the balance of the attorney's fee, defendant-employer, Homelite, Inc., shall forward every fourth compensation check directly to plaintiff's counsel.
5. As plaintiff has not yet reached maximum medical improvement, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment to plaintiff which may be due, either party may request a hearing from the Commission to resolve this issue.
6. Defendant-employer, Homelite, Inc., shall pay the costs, including expert witness fees of $470.00 to Dr. Robert Humble.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER